UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO. 3:05CV-116-R

MICHAEL SUYEYASU                                                                                PLAINTIFF

v.

GE SUPPLY;                                                                                       DEFENDANTS
JIM SEDOSKEY

**MEMORANDUM OPINION**

This matter is before the Court on Defendants GE Supply and Jim Sedoskey's Motion for Summary Judgment (Docket #32). Plaintiff filed a response (Docket #33) to which Defendants have replied (Docket #34). For the reasons that follow, Defendants' Motion for Summary Judgment is GRANTED.

**BACKGROUND**

Plaintiff Michael Suyeyasu was born in the United States and is of Chinese and Japanese descent. He began working for Defendant GE Supply (GE) in 1985. He worked for GE intermittently from 1985 to 1989 and continuously from 1989 to September 2004. In November 1996, Plaintiff was transferred to an outside sales position in Louisville, Kentucky, where he remained until the end of his employment with GE.

Defendant Jim Sedoskey was the manager of the Louisville branch and Plaintiff's direct-line supervisor from 1998 to 2003. Shortly after Sedoskey arrived, he asked the employees for suggestions on how to improve branch performance. Plaintiff and Mike Castro, a colleague from the Dominican Republic, offered such suggestions to Sedoskey. Sedoskey replied that the two men were being negative and threatened to take this information to higher levels if their behavior

continued.

In 1998, Plaintiff put in a $100,000 bid for GE Appliance Park, a bid that Sedoskey instructed him not to place. Plaintiff concedes that the margins of the bid were lower than a minimum five percent gross margin, however, he states that the usual course of action was for a GE salesperson to get the order, then work with suppliers on the back end to get more margin into it.[1] Plaintiff also claims that Sedoskey provided him with unrealistic sales goals when compared to the sales goals assigned to Greg Parsons, a Caucasian.

On January 3, 2001, Plaintiff filed a complaint of employment discrimination with Deanna Wilson, a GE Human Resources employee. Plaintiff told Wilson of perceived similarities between how Sedoskey treated him and Castro, who was fired shortly after Sedoskey became manager, and claimed Sedoskey had passed false information about Plaintiff to upper management and had impeded Plaintiff's sales. Wilson investigated the complaint and found it to be without merit.

In May 2001, Plaintiff was given his performance review by Sedoskey for 2000. Plaintiff received an overall rating of acceptable with a stable trend. Sedoskey indicated that "[Plaintiff] is a reliable and consistent performer at his current level although he fell short of his sales and margin objectives in 2000." In prior reviews, Plaintiff's work had been rated as fully satisfactory to excellent with a positive or upward trend.

Plaintiff was compensated based solely on commission from 1998 until 2004. He indicates that at some point after the 2000 performance review, he asked to be taken off this one-hundred percent commission basis as he had lost accounts, which he claims was due to Sedoskey's actions,

---

[1] Plaintiff claims that Sedoskey allowed a salesperson from Evansville to bid and to place an order smaller than Plaintiff's $100,000 bid with a gross margin under five percent, however, he points to no evidence supporting this assertion.

2

and as a result, his annual income had dropped by fifty-four percent from 2001 to 2002.[2] Plaintiff indicates that although GE's typical course of action was to leave an outside salesperson on one-hundred percent commission for eighteen to twenty-four months, he remained on this compensation structure until 2004.[3] As evidence of discrimination, Plaintiff points to the situation of Earl Crim, a Caucasian who held an outside sales position in Lexington like that of Plaintiff's and was also supervised by Sedosky. Crim, unlike Plaintiff, was never placed on one-hundred percent commission. Whether Crim made more or less than Plaintiff is unclear. Plaintiff also indicates that Sedoskey had recognized Crim for his sales efforts with the award of a prize but that he refused to recognize Plaintiff's sales efforts in a similar way.

Plaintiff indicates that he requested formal leadership training in order to develop managerial skills.[4] Plaintiff states that while he was never given this opportunity, Greg Parsons and Jerry Schwendeman, both Caucasian, were provided leadership training. In April 2002, the branch manager position in Louisville was posted as vacant and Plaintiff filed an application. Plaintiff confirmed with Wilson that she received his application, but she refused to permit Plaintiff to interview for the position, which was ultimately awarded to Parsons. Region Manager Don Adler stated that Parsons "had been acting in a sales leadership position and had performed well in that position . . . Accordingly, Greg Parsons was selected for the position of Branch Manager." Wilson

---

[2] Plaintiff asserts that in 2002 he sent Sedoskey a 1.2 million dollar order and requested Sedoskey's assistance with it, but that Sedoskey ignored him, resulting in GE being cut out of the deal.

[3] Plaintiff testified that he was on salary for the first year when he arrived in Louisville in 1996.

[4] On his 2000 review Plaintiff stated, "I would be interested in developing 'Managerial Skills' and 'Technical Skills.' I have a broad base of experience which could potentially be used in a management role but would require some direction as to necessary training requirements."

3

advised Plaintiff that he was not interviewed for the branch manager position because he did not have leadership training. Rob Wood, a Caucasian, was awarded the branch manager position in Ft. Wayne, Indiana, without having leadership training.

In December 2002, Plaintiff filed a charge with the Equal Opportunity Commission (EEOC), claiming that GE had filed to promote him because of his race. Plaintiff voluntarily dismissed the charge at mediation.

In 2004, Sedoskey transitioned accounts out of the Louisville branch, thus decreasing the potential income of the sales force. Bob Adams, Ron Jeffries, Matt Lage, and Danny Moss, all Caucasian, were downsized and provided a severance package. Plaintiff also asserts that in September 2004, Wilson failed to return his mortgage broker's telephone calls.

On September 16, 2004, Plaintiff tendered a resignation letter indicating that he had decided to accept a position with Northwestern Mutual Financial Network. Plaintiff stated, "I enjoyed working with this team and feel you will lead them to being very successful; however, I feel my personal future career opportunities at GE Supply are limited and need to pursue this opportunity." After Plaintiff left GE's employ, he was replaced by an African-American.

Plaintiff filed a verified complaint in Jefferson Circuit Court on February 3, 2005, alleging unlawful discrimination and retaliation for legally protected conduct pursuant to KRS 344. Defendant removed the matter to this Court pursuant to diversity jurisdiction as provided in 18 U.S.C. § 1332.

**STANDARD**

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996). Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476 (Ky. 1991)." *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

**DISCUSSION**

**I.    UNLAWFUL DISCRIMINATION**

The Kentucky Civil Rights Act (KCRA), KRS §344.040(1), states in pertinent part:

It is an unlawful practice for an employer: (1) To fail or refuse to hire, or to discharge any individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's race, color, religion, national origin, sex, age forty (40) and over, because the person is a qualified individual with a disability, or because the individual is a smoker or nonsmoker, as long as the person complies with any workplace policy concerning smoking.

Here, Plaintiff claims that Defendants discriminated against him with respect to his employment because of his race or national origin.

In Kentucky and on a federal level, all civil rights claims are analyzed under the standard set by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Harker v. Fed. Land Bank of Louisville*, 679 S.W.2d 226, 230 (Ky. App. 1984). Under the *McDonnell Douglas* standard, the Plaintiff must first establish a *prima facie* case of discrimination by showing: (1) that he belongs to the statutory protected class; (2) he performed his job satisfactorily (was otherwise qualified for the position); (3) he was subject to an adverse employment decision; and (4) the adverse decision resulted in a similarly situated person outside of the protected class being treated more favorably.[5] *McDonnell Douglas*, 411 U.S. at 802-805; *Harker*, 679 S.W.2d at 230.

The Sixth Circuit has defined an adverse employment action as a "materially adverse change in the terms and conditions of plaintiff's employment." *EEOC v. Sundance Rehab. Corp.*, 466 F.3d

---

[5] Defendants do not deny that Plaintiff was a member of a protected class or that he performed his job satisfactorily.

490, 501 (6th Cir. 2006) (internal quotation omitted). "Examples of adverse employment actions include firing, failure to promote, reassignment with significantly lower responsibilities, a material loss of benefits, suspensions, and other indices unique to a particular situation." *Id.* (quoting *Smith v. City of Salem*, 378 F.3d 566, 575-76 (6th Cir. 2004). This Court looks to whether a particular employment action was "objectively intolerable to a reasonable person," rather than an individual's subjective impressions, in order to determine whether an employment action was materially adverse. *Policastro v. Nw. Airlines, Inc.*, 297 F.3d 535, 539 (6th Cir. 2002). "In short, the action must have a 'significant determinetal effect' on the employee's status as evidenced by objective factors, not subjective impressions." *Freeman v. Potter*, 200 Fed. Appx. 439, 442-43 (6th Cir. 2006) (internal quotation omitted). Importantly, this standard filters out claims establishing merely a "bruised ego" or a "mere inconvenience." *White v. Burlington N. & Sante Fe Ry.*, 364 F.3d 789, 802 (6th Cir. 2004) (en banc), *aff'd*, 126 S. Ct. 797 (2005).

If the plaintiff can meet this initial hurdle, the burden then shifts to the employer who must then state with clarity their legitimate reason for the adverse decision. *Harker*, 679 S.W.2d at 230. If the employer offers a legitimate reason, then the burden shifts back to the plaintiff who must show that he is the victim of intentional discrimination and that the employer's reasons were pretextual. *Id.*; *Ky. Ctr. for the Arts v. Handley*, 827 S.W.2d 697, 700-701 (Ky. App. 1991).

To meet this final burden the plaintiff must offer direct or circumstantial evidence that rebuts the reasoning offered by the employer. *Handley*, 827 S.W.2d at 700-701; *Ky. Dep't of Corr. v. McCullough*, 123 S.W.3d 130, 135 (Ky. 2003) (citing *Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000); *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1973)). Direct evidence consists of evidence, "which if believed by the trier of fact, will prove the particular fact

7

in question without reliance on inference or presumption." *McCullough*, 123 S.W.2d at 135. Circumstantial evidence is "evidence sufficient to raise the inference that [the] protected activity was the likely reason for the adverse action." *Id.* Although the burden of proof may be on the plaintiff to meet this final standard, in a civil rights case the Plaintiff "must be given a full and fair opportunity to demonstrate by competent evidence that the presumptively valid reasons for his rejection were in fact a coverup for a . . . discriminatory decision." *McDonnell Douglas*, 411 U.S. at 805.

**A.    Individual Liability of Sedoskey**

Plaintiff brings his discrimination claim against Sedoskey under KRS 344.040, which makes it unlawful for an employer to discriminate based on race or national origin.[6] A supervisor who does not independently meet the definition of an employer cannot be held individually liable for violating KRS 344.040. *Conner v. Patton*, 133 S.W.3d 491, 493 (Ky. Ct. App. 2004). There is no evidence to support a finding that Sedoskey qualifies as an employer under KRS 344.040.

Therefore, this Court finds that Plaintiff's claim of employment discrimination against Sedoskey fails as a matter of law.

**A.    Constructive Discharge**

Although Plaintiff resigned from his position at GE, he contends that he was forced out by Defendants. Constructive discharge constitutes an adverse employment action. *Logan v. Denny's, Inc.*, 259 F.3d 558, 568 (6th Cir. 2001). To demonstrate a constructive discharge, Plaintiff must

---

[6] KRS 344.030 defines "employer" in relevant part as:

a person who has eight (8) or more employees within the state in each of twenty (20) or more calendar weeks in the current or preceding calendar year and an agent of such a person.

8

provide evidence showing (1) that the employer deliberately created intolerable working conditions as perceived by a reasonable person; and (2) that the employer did so with the intent of forcing the employee to quit. *Id.* at 568-69.

The Sixth Circuit has adopted seven factors that a court should consider for purposes of satisfying the first prong of this inquiry:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.

*Id.* at 569. Plaintiff has arguably alleged factor (2).

Plaintiff asserts that his annual income dropped by fifty-four percent from 2001 to 2002 as he had lost accounts, which he claims was due to Sedoskey's actions.[7] Plaintiff indicates that although GE's typical course of action was to leave an outside salesperson on one-hundred percent commission for eighteen to twenty-four months, he remained on this compensation structure until 2004. Plaintiff states that Crim, a Caucasian employee who held an outside sales position like that of Plaintiff's in Lexington and was also supervised by Sedoskey, was never placed on one-hundred percent commission.

Although Plaintiff states that his salary fell by fifty-four percent from 2001 to 2002, he does not offer any evidence as to the salaries of employees outside of his protected class during that time period. Nor has Plaintiff shown a reduction in salary beyond that one year period. Plaintiff states that Crim was never placed on one-hundred percent commission but offers no evidence as to

---

[7] Plaintiff asserts that in 2002 he sent Sedoskey a 1.2 million dollar order and requested Sedoskey's assistance with it, but that Sedoskey ignored him, resulting in GE being cut out of the deal and a substantial loss of income to Plaintiff.

9

whether Crim's salary was more or less than Plaintiff's salary. Thus, Plaintiff has failed to show that any reduction in salary that he suffered from 2001 to 2002 resulted in a similarly situated person outside of his protected class being treated more favorably, and, therefore, has failed to establish a *prima facie* case of discrimination.

### B.    Performance Evaluations

Defendant claims that his receipt of an evaluation from Sedoskey rating his performance as acceptable with a stable trend after many years of receiving performance ratings of excellent with an upward trend constituted an adverse employment action. In *Primes v. Reno*, the Sixth Circuit found that Plaintiff's receipt of a mid-range performance evaluation of "fully successful" where others received the same rating was not an adverse employment action as contemplated by Title VII. 190 F.3d 765, 767 (6th Cir. 1999). In *Hollins v. Atlantic Co.*, plaintiff filed a claim for retaliation following her receipt of lowered performance ratings after filing a disparate treatment claim. 188 F.3d 652, 655 (6th Cir. 1999). The Sixth Circuit held that the plaintiff in that case had failed to establish an adverse employment action because "she had produced no evidence showing that the lowered performance ratings actually had an effect on her wages such that a court may conclude that there was a materially adverse employment action." *Id.* at 662. Here, Plaintiff has shown no adverse change in his employment status caused by the change in his performance review, nor has he shown that other employees did not receive similar reviews. Therefore, this Court finds that the changed performance review does not constitute an adverse employment action.

### C.    Requested Training

Plaintiff argues that Defendants denial of his requests for leadership which Defendants provided to his Caucasian co-workers Parsons and Schwendeman constituted an adverse

10

employment action. "An employer's denial of an employee's request for more training is not, without more, an adverse employment action. *Griffith v. City of Des Moines*, 387 F.3d 733, 737 (8th Cir. 2004); *see also Vitt v. City of Cincinnati*, 97 Fed. Appx. 634, 640 (6th Cir. 2004) (finding denial of training was not an adverse employment action because "[s]uch decisions to deny or grant training . . . clearly fall with in the realm of the employer's business judgment. Plaintiff was free to seek any desired training in her free time at her own expense; her employer was not required to provide it"). Additionally, although Plaintiff indicates that Defendants provided training to Parsons and Schwendeman, he fails to indicate which training programs were provided and when they were provided.[8] Thus, Plaintiff has failed to provide evidence showing that Defendants' failure to provide him with leadership training resulted in a similarly situated person outside of his protected class being treated more favorably. Plaintiff has therefore failed to establish a *prima facie* case of discrimination based on Defendants' failure to provide him with leadership training.

### D.     Failure to Interview Plaintiff for Branch Manager Position

Plaintiff claims that Defendants' discriminated against him when they failed to interview Plaintiff for the Louisville branch manager's position which was ultimately offered to Parsons, a Caucasian employee. Defendants assert that Parsons received this position due to his eighteen years of prior management experience, his exemplary sales performance, and his consistently high performance ratings for leadership characteristics.

"In a failure to promote discrimination case, the Sixth Circuit has modified the elements of the [*McDonnell Douglas*] test to fit the specific context." *White v. Columbus Metro. Hous. Auth.*,

---

[8] Although Plaintiff offers as an exhibit Parson's Individual Experience Record from GE which indicates that Parsons had participated in training programs in 1997 and 2001, there is no indication that these programs were provided by GE.

11

429 F.3d 232, 240 (6th Cir. 2005) (citing *Nguyen*, 229 F.3d at 562-63). A plaintiff with a discrimination claim based on a failure to promote must demonstrate that

> (1) she is a member of a protected class; (2) she applied for and was qualified for a promotion; (3) she was considered for and was denied the promotion; and (4) an individual of similar qualifications who was not a member of the protected class received the job at the time plaintiff's request for the promotion was denied.

*Id.* (citing *Nguyen*, 229 F.3d at 562-63).

While Plaintiff has met prongs (1) (2), and (3) of the test, Plaintiff fails to meet the last prong.[9] Although Parsons is not a member of Plaintiff's protected class, Plaintiff has failed to show that he possessed similar qualifications to those of Parson. Thus he has failed to establish a *prima facie* case of discrimination based on Defendants' failure to promote him to the position of branch manager.

Even if Plaintiff could establish a *prima facie* case of racial discrimination with respect to his failure to promote claims, GE had a legitimate, nondiscriminatory reason for promoting Parsons to the position based on his experience and his performance. Parsons had been acting in a sales leadership position and had performed well in that position. Parsons had eighteen years of prior management experience, exemplary sales performance, and consistently high performance ratings for leadership characteristics. Plaintiff has failed to provide evidence that GE's determination not to promote him was a mere pretext for discrimination. Plaintiff points only to his qualifications as

---

[9] Plaintiff contends that he was not considered for the branch manager position because he was not interviewed. However, he admits that Wilson responded to his email confirming his interest and contacted him to tell him that Parsons was selected for the job. In *White v. Columbus Metropolitan Housing Authority*, the Sixth Circuit rejected the same argument under similar circumstances: "while White argues that she was not considered for the position because she was not granted an interview . . . [White] was considered at some stage of the hiring procedure or she would have not received the rejection letter." 429 F.3d at 241 n.4.

evidence that he was discriminatorily denied the promotion. "[I]n the case in which there is little or no other probative evidence of discrimination, to survive summary judgment the rejected applicant's qualifications must be so significantly better than the successful applicant's qualifications that no reasonable employer would have chosen the latter applicant over the former." *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 627 (6th Cir 2006). Plaintiff has failed to provide that evidence here.

## II. RETALIATION

To establish a *prima facie* case of retaliation under KRS 344.280, Plaintiff must demonstrate that: (1) he engaged in a protected activity; (2) his engagement in that protected activity was known to Defendants; (3) Defendants thereafter took an adverse employment action against him; and (4) a causal link between his engagement in the protected activity and the adverse employment action. *Brooks v. Lexington-Fayette Urban County Hous. Auth.*, 132 S.W.3d 790, 801-803 (Ky. 2004); *Nguyen*, 229 F.3d at 563 (applying the same standard under Title VII). Defendants do not deny that Plaintiff engaged in protected activity of which they were aware, specifically the discrimination complaint lodged with Wilson on January 3, 2001, and the EEOC complaint filed in December 2002; however they argue that they did not take any adverse employment action against Plaintiff. Defendants also assert that even if Plaintiff could show that he suffered an adverse employment action, he could not establish a causal connection between the alleged action and his complaint.

The causal link between protected activity and an adverse employment action can be proven through two ways, either: "(1) through direct evidence; or (2) through knowledge coupled with a closeness in time that creates an inference of causation." *Nguyen,* 229 F.3d at 566 (quoting *Parnell v. West*, No. 95-2131, 1997 WL 271751, at *2 (6th Cir. May 21, 1997)). "Previous cases that have

13

permitted a *prima facie* case to be made based on the proximity of time have all been short periods of time, usually less than six months." *DiCarlo v. Potter*, 358 F.3d 408, 421 (6th Cir. 2004) (quoting *Parnell*, 1997 WL 271751, at *3); *see also Cooper v. North Olmsted*, 795 F.2d 1265, 1272 (6th Cir. 1986) (finding plaintiff's discharge four months after filing discriminatory claim insufficient to support an inference of retaliation).

Plaintiff claims that his receipt of an evaluation rating his performance as acceptable with a stable trend following his entry of a discrimination complaint constituted an adverse employment action. As discussed above, Plaintiff has shown no adverse change in his employment status caused by the change in his performance review, nor has he shown that other employees did not receive similar reviews. Therefore, this Court finds that the changed performance review does not constitute an adverse employment action. *See Primes,* 190 F.3d at 767; *Hollins v. Atlantic Co.*, 188 F.3d at 662; *see also Sweeney v. West*, 149 F.3d 550, 557 (7th Cir. 1988) (if negative performance evaluation were deemed actionable as "retaliation," it would "send a message to employers that the slightest nudge or admonition . . . can be the subject of a federal lawsuit").

Plaintiff also claims that Defendants attempted to transition an account away from him to Jerry Schwendeman in retaliation for his complaint; however, Plaintiff did not indicate when this occurred. In order to establish a *prima facie* case of retaliation under KRS 344.280, Plaintiff must show that an adverse employment action occurred *after* he engaged in the protected activity. *Brooks*, 132 at 801-803; *Nguyen*, 229 F.3d at 563. As Plaintiff has failed to show that this event occurred after he lodged his complaint, this Court finds that the attempt to transition an account away from Plaintiff cannot provide the basis for a *prima facie* case of retaliation.

Plaintiff claims that he was retaliated against by Wilson when she failed to return his

14

mortgage broker's calls in September 2004. Defendants argue that this action cannot be deemed materially adverse. The anti-retaliation statute protects an individual only from retaliation that produces an injury or harm. *Burlington N. & Santa Fe Ry. v. White*, 126 S. Ct. 2405, 2414 (2006). In order to be actionable, the "plaintiff must show that a reasonable employee would have found the challenged action materially adverse . . . mean[ing] it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 2415 (internal quotation omitted). Here, there is no showing that a failure to return a mortgage broker's calls would dissuade a reasonable worker from making or supporting a charge of discrimination. *See id.* ("normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence"). This Court finds that Wilson's failure to return Plaintiff's mortgage broker's calls does not constitute adverse employment action. Additionally, this Court finds that even if such conduct was adverse employment action, the lapse in time from the time that the EEOC charge was filed and Wilson's failure to return the mortgage broker's calls, a period of twenty months, was too long to support an inference of causation. *See DiCarlo*, 358 F.3d at 421. Thus, this Court finds that Wilson's failure to return Plaintiff's mortgage broker's calls cannot provide the basis for a *prima facie* case of retaliation.

Plaintiff claims that Defendants retaliated against him when, at some point in 2002, they refused to give him a sales award and instead insisted it be raffled to the branch, although the month before Defendants provided Crim a similar sales award.[10] Even if this conduct were an adverse employment action, this Court finds that the lapse in time from the date that the complaint was lodged and the refusal to give Plaintiff the sales award was too long to support an inference of

---

[10] Plaintiff asserts that this award was to the effect of a palm pilot.

causation. *See Dicarlo*, 358 F.3d at 421. Plaintiff filed his complaint on January 3, 2001. He states that the refusal to award him the sales award occurred at some point in 2002. Thus, at least twelve months passed from the time the complaint was lodged and the refusal to give the award.[11] Therefore, this Court finds Defendants' refusal to give Plaintiff the sales award cannot provide the basis for a *prima facie* case of retaliation.

Plaintiff asserts that Defendants retaliated against him by refusing to provide leadership training he had requested and instead provided leadership training to Parsons and Schwendeman. Plaintiff's statement on his 2000 review that he "would be interested in developing 'Managerial Skills' and 'Technical Skills'" and that he has "a broad base of experience which could potentially be used in a management role but would require some direction as to necessary training requirements" is the only semblance of a request for leadership training that a review of the record reveals. The Court finds that Defendants' failure to provide training to Plaintiff in response to this statement was not a materially adverse action. *See Burlington*, 126 S. Ct. at 2415. Plaintiff did not make a request for a particular training program or for training occurring at a specific time. The Court reads his statement as affirmatively requesting only information concerning what training he should seek in order to develop managerial and technical skills, a broad inquiry. Nor has Plaintiff provided any evidence that Defendants affirmatively denied his requests for training or that he sought to engage in a particular program of training that Defendants failed to provide. Although

---

[11] The Court notes that it did not address the EEOC charge under this alleged adverse employment action as Plaintiff must show a causal connection between the alleged adverse employment action and his engagement in the protected activity. *See Brooks*, 132 S.W.3d at 801-803; *Nguyen*, 229 F.3d at 563. Plaintiff has failed to assert that Defendant's refusal to give him a sales award occurred prior to his filing of the charge. In order to establish a *prima facie* case of retaliation under KRS 344.280, Plaintiff must show that an adverse employment action occurred *after* he engaged in the protected activity. *Id.*

Plaintiff indicates that Defendants provided training to Parsons and Schwendeman, he fails to indicate which training programs were provided and when they were provided. Plaintiff has failed to show that the Defendants' response to Plaintiff's statement on his 2000 review would have "dissuaded a reasonable worker from making or supporting a charge of discrimination" and, therefore, it cannot provide the basis for a *prima facie* case of retaliation. *See Id.*

Plaintiff asserts that Defendants retaliated against him when Sedoskey ignored Plaintiff's request for help in securing a 1.2 million dollar bid at some point in 2002. Plaintiff testified that he "had sent Mister Sedoskey an e-mail about the -- the one point two million dollar order that was going through GE Appliances in -- I guess that was in 2002 and basically, he had ignored my requests on that." The email was not offered as an exhibit. Thus, this Court possesses limited knowledge of the contours of Plaintiff's request for help and in turn the adequacy of Sedoskey's response to that request. However, this Court finds that even were this conduct an adverse employment action, the lapse in time from the date that the complaint was lodged and Sedoskey's failure to fulfill Plaintiff's request for help in securing the bid was too long to support an inference of causation. *See Dicarlo*, 358 F.3d at 421. Plaintiff filed his complaint on January 3, 2001. He states that Sedoskey's failure to fulfill his request for help occurred at some point in 2002. Thus, at least twelve months passed from the time the complaint was lodged and the request for help.[12] Therefore, this Court finds Sedoskey's failure to fulfill Plaintiff's request for help in securing the

---

[12] The Court notes that it did not address the EEOC charge under this alleged adverse employment action as Plaintiff must show a causal connection between the alleged adverse employment action and his engagement in the protected activity. *See Brooks*, 132 S.W.3d at 801-803; *Nguyen*, 229 F.3d at 563. Plaintiff has failed to assert that Sedoskey's failure to fulfill his request for help occurred prior to his filing of the charge. In order to establish a *prima facie* case of retaliation under KRS 344.280, Plaintiff must show that an adverse employment action occurred *after* he engaged in the protected activity. *Id.*

17

bid cannot provide the basis for a *prima facie* case of retaliation.

Plaintiff asserts that Defendants retaliated against him when they let other GE employees go with a severance package but did not offer him a severance package and instead kept him in their employ.[13] Plaintiff states that instead of giving him a severance package, Defendants chose instead to starve him out, ensuring that Plaintiff would leave of his own accord without any entitlement to a severance package. Plaintiff tendered a resignation letter on September 16, 2004.[14] This Court finds that even if this conduct was an adverse employment action, the lapse in time from the date that the complaint was lodged and Defendants' failure to downsize Plaintiff and provide him with a severance package as it did with other employees was too long to support an inference of causation. *See Dicarlo*, 358 F.3d at 421. Plaintiff filed his complaint on January 3, 2001. He filed his charge with the EEOC in December 2002. He states that other employees were downsized and given severance packages at some point in 2004. Over a year passed from the time the EEOC charge was filed and the downsizing. Thus, this Court finds Defendants' failure to downsize Plaintiff and provide him with a severance package cannot provide the basis for a *prima facie* case of retaliation.

Plaintiff claims that Defendants retaliated against him by refusing to place him on salary, as it did Crim and Bennett, until January 2004. Plaintiff states that although GE's typical course of action was to leave an outside salesperson on one-hundred percent commission for eighteen to

---

[13] In 2004, Adams, Jeffries. Lage, and Moss were downsized and provided a severance package.

[14] Plaintiff's tender of his resignation letter occurred at least nine months after Sedoskey was no longer his branch manager.

18

twenty-four months, he remained on this compensation structure until 2004.[15]  If GE had followed what Plaintiff claims is their usual practice, Plaintiff would have been taken off one-hundred percent commission at some point in 2001.  Plaintiff also indicates that at some point after receiving his 2000 performance review in 2001, he asked to be taken off this one-hundred percent commission basis.  Plaintiff offers no evidence to the effect removal from one-hundred percent commission would have had on his salary.  There is no evidence that Plaintiff's position would have been any more favorable if he were taken off this salary structure.  As Plaintiff has failed to show that Defendants' failure to take him off this one-hundred percent commission basis would have "dissuaded a reasonable worker from making or supporting a charge of discrimination," this Court finds that this action can not provide the basis for a *prima facie* case of retaliation.  *See Burlington*, 126 S. Ct. at 2415.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED.

An appropriate order shall issue.

---

[15] Plaintiff was on salary the first year after he arrived in Louisville in 1996.